RECORD NO. 20-7102

In The

# United States Court of Appeals
### For The Fourth Circuit

## SHELLY KAYE STEVENS, et al.,

*Plaintiffs–Appellants,*

**v.**

## DAWN M. HOLLER, et al.,

*Defendants–Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE

───────────

## BRIEF OF APPELLANTS

───────────

Charles N. Curlett, Jr.
Lauren M. McLarney
ROSENBERG MARTIN GREENBERG, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland  21202
(410) 727-6600

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF THE ISSUES PRESENTED .................................. 1

STATEMENT OF THE CASE .......................................................... 2

    I.    Factual Background ............................................................ 2

    II.   Procedural Background. ....................................................... 8

SUMMARY OF THE ARGUMENT ................................................ 14

ARGUMENT ................................................................................. 15

    I.    Standard of Review ......................................................... 15

    II.   Argument. ....................................................................... 15

        A. The District Court Overlooked Allegations That Supported The Subjective Component of Deliberate Indifference And Did Not Draw Reasonable Inferences In Plaintiffs' Favor In Assessing That Element ............................................................................ 19

        B. The District Court Applied A Standard More Stringent Than That Required to Survive A Motion To Dismiss Under *Twombly* And *Iqbal* ............................................................................ 29

        C. The District Court Also Failed To Draw Reasonable Inferences In Plaintiffs' Favor With Regard To The Adequacy of Mr. Stevens' Care ............................................................................ 32

        D. Because the District Court Erred In Finding That No Constitutional Violations Were Stated, The Remaining Claims Should Be Reinstated ............................................................................ 35

REQUEST FOR ORAL ARGUMENT ...................................................37

CONCLUSION .......................................................................................37

ADDENDUM:

    42 U.S.C. § 1983 .................................................................Add. 1

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arnett v. Webster*,
    658 F.3d 742 (7th Cir. 2011) ..........................................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).........................*passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).........................*passim*

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).....................................20

*Brice v. Virginia Beach Correctional Center*,
    58 F.3d 101 (4th Cir. 1995) .....................................................................20, 28

*Charles v. Orange County*,
    925 F.3d 73 (2d Cir. 2019).............................................................................29

*City of Revere v. Massachusetts Gen. Hosp.*,
    463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)..................................18

*Clinkscales v. Pamlico Correctional Facility Medical Dept.*,
    238 F.3d 411 (4th Cir. 2000) ........................................................................18

*Connor v. Donelly*,
    42 F.3d 220 (4th Cir. 1994) ..........................................................................17

*Cooper v. Dyke*,
    814 F.2d 941 (4th Cir. 1987) ............................................................22, 23, 31

*De'lonta v. Johnson*,
    708 F.3d 520 (4th Cir. 2013) ..................................................................*passim*

*DeShaney v. Winnebago County Dept. of Social Services*,
    489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)..................................18

*Dixon v. County of Cook*,
    819 F.3d 343 (7th Cir. 2016) ..................................................29–30

*Estelle v. Gamble*,
    429 U.S. 97, 97 S.Ct. 291, 50 L.Ed.2d 251 (1976)..................17, 18

*Farmer v. Brennan*,
    511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).......................*passim*

*Formica v. Aylor*,
    739 Fed.Appx. 745 (4th Cir. 2018)...........................................24, 32

*Grayson v. Peed*,
    195 F.3d 692 (4th Cir. 1999) .......................................................35

*Greeno v. Daley*,
    414 F.3d 645 (7th Cir. 2005) .......................................................23

*Gregg v. Georgia*,
    428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)....................17

*Houck v. Substitute Trustee Services, Inc.*,
    791 F.3d 473 (4th Cir. 2015) ...........................................16, 17, 30

*Jackson v. Lightsey*,
    775 F.3d 170 (4th Cir. 2014) .................................................16, 34

*Jordan by Jordan v. Jackson*,
    15 F.3d 333 (4th Cir. 1994) ........................................................29

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)................29

*Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985) ...........................20

*Monell v. Dep't of Soc. Servs. of the City of New York*,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978)............................*passim*

iv

*Owens v. Baltimore City State's Attorneys Office*,
    767 F.3d 379 (4th Cir. 2014) ......................................................15, 16, 17, 30

*Parrish ex rel. Lee v. Cleveland*,
    372 F.3d 294 (4th Cir. 2004) ......................................................19, 20, 25, 28

*Perry v. Meade*,
    728 Fed.Appx. 180 (4th Cir. 2018)................................................23, 27, 34

*Prince George's County v. Longtin*,
    419 Md. 450, 19 A.3d 859 (2011) ..................................................9, 11, 13, 36

*Robertson v. Sea Pines Real Estate Cos.*,
    679 F.3d 278 (4th Cir. 2012) .......................................................16

*Rogers v. Jefferson-Pilot Life Ins. Co.*,
    883 F.2d 324 (4th Cir.1989) ...................................................17, 29

*Scarbro v. New Hanover County*,
    374 Fed.Appx. 366 (4th Cir. 2010)........................................20, 28

*Scinto v. Stansberry*,
    841 F.3d 219 (4th Cir. 2016) .............................................20–21, 26, 27, 32

*Stilwell v. Conceco*,
    213 F.3d 632 (4th Cir. 2000) .......................................................17

*Tahir Erk v. Glenn L. Martin Co.*,
    116 F.2d 865 (4th Cir. 1941) .......................................................16

*White ex rel. White v. Chambliss*,
    112 F.3d 731 (4th Cir. 1997) .......................................................18

*Wilson v. Seiter*,
    501 U.S. 294, 298 (1991)...........................................................18

*Young v. City of Mount Ranier*,
    238 F.3d 567 (4th Cir. 2001) .......................................................18

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. VIII.................................................................17, 18, 32

U.S. Const. amend. XIV ............................................................9, 10, 17, 29

Art. 24, Maryland Declaration of Rights .........................................*passim*

## STATUTES

42 U.S.C § 1983 ............................................................................*passim*

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1367 ..............................................................................36, 37

Md. Code Ann., Cts. & Jud. Proc. § 3–904 (Wrongful Death Act) ..........1, 9, 11, 36

## RULES

Fed. R. App. P. 34(a) ...........................................................................37

Fed. R. Civ. P. 8(a)...............................................................................15

Fed. R. Civ. P. 12(b)(6)...............................................................10, 15, 29

4th Cir. R 24(a) ...................................................................................37

## STATEMENT OF JURISDICTION

This is an appeal of an Order dismissing claims for inadequate provision of medical care by health care providers at the Allegany County Detention Center, as well as their employer, Wellpath, LLC ("Defendants"), which led to the untimely death of James Allen Leslie Stevens ("Mr. Stevens") after just four days in detention.

On May 6, 2020, Appellants Shelly Stevens, as Mr. Stevens' widow and on behalf of Mr. Stevens' Estate, filed a Second Amended Complaint in the U.S. District Court for the District of Maryland ("District Court") alleging claims for deliberate indifference to Mr. Stevens' serious medical needs under 42 U.S.C. § 1983, municipal liability against Wellpath, LLC pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), claims under the state analogs to § 1983 and *Monell*, and three state law claims for negligence and wrongful death. On July 10, 2020, the District Court granted the Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim, dismissing all constitutional claims with prejudice and opting not to exercise supplemental jurisdiction over the three remaining state law claims. Plaintiffs timely noted this appeal.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1. Did the District Court err when it dismissed Plaintiffs' claims for deliberate indifference to a detainee's serious medical needs under 42 U.S.C. § 1983 without drawing reasonable inferences in Plaintiffs' favor from a multitude of factual allegations that supported the subjective component of that claim?

1

# STATEMENT OF THE CASE

## I.   Factual Background

James Stevens ("Mr. Stevens or "Decedent") lived in Cumberland, Maryland with his wife, Appellant Shelly Stevens ("Mrs. Stevens" or "Plaintiff"). JA 270. In November 2016, a bench warrant was issued for Mr. Stevens' arrest over a drug charge. JA 274. On November 24, 2016, after spending Thanksgiving with his family, Mr. Stevens voluntarily surrendered to the Allegany County Detention Center ("Detention Center"). JA 275.

Wellpath, LLC – Correct Care Solutions in 2016 – ("Wellpath") provides health care personnel to correctional facilities across the country, including the Detention Center. JA 269–70. All of the individual health care providers working at or affiliated with the Detention Center are Wellpath employees.[1]

Mr. Stevens hoped to be detained briefly and released on Friday. JA 284–85. But because of the holiday, courts were closed, and he was there for four days. *Id.*

Dawn M. Holler, LPN, ("Defendant Holler") performed a reception screening of Mr. Stevens. JA 276. Mr. Stevens was 44 years old and weighed approximately 375 pounds. *Id.* He had a history of congestive heart failure, high blood pressure, asthma, diabetes, and other medical conditions. *Id.* The screening records reflect

---

[1] Wellpath "has a long and troubled history of failing to ensure that its employees call for hospitalizations or provide necessary medical care in the face of medical emergencies." JA 291. Its litigation history is vast and compelling. *See* JA 291–94.

this complex medical profile, as well as the fact that Mr. Stevens had been hospitalized recently and brought 20 medications with him. JA 276. The screening also showed that Mr. Stevens drank alcohol and regularly used oxycodone and heroin. JA 277. He reported that he did not have a history of withdrawal besides loose stools. *Id.* Nevertheless, the screening confirmed that Mr. Stevens was in stable condition, although he said he had a 6 out of 10 on the pain scale, and his blood pressure was extremely high. JA 277–78. Mr. Stevens was not examined by a physician, and Defendant Holler did not consult one. JA 278. Her notes indicate that she knew Mr. Stevens had "extensive Health issues." JA 280.

Defendant Holler referred Mr. Stevens for the Alcohol and Benzodiazepine Withdrawal protocol, which called for the patient to be assessed and scored every few hours and take 50 mg of Librium, among other medications. JA 279. She also referred Mr. Stevens for the Opiate Withdrawal protocol, which called for a similar monitoring and scoring. *Id.* She also referred him for a diabetic diet and insulin. *Id.* Around 5:00 a.m., just hours later, Mr. Stevens reported back to the medical unit for reasons that are not documented in his detention records. JA 280.

Nurses Stephanie D. Shroyer and Leslie A. Logsdon ("Defendant Shroyer" and "Defendant Logsdon") reviewed and approved Defendant Holler's orders. JA 281. Defendant Logsdon made a "Master Problem List" indicating her recognition of Mr. Stevens' comorbid conditions. *Id.* Dr. Donald Frederick Manger ("Defendant

Manger") gave verbal orders for Mr. Stevens to continue his prescribed medications and to begin taking Librium for his anticipated withdrawal. *Id.* Defendant Manger was not present at the Detention Center then or any time. JA 282. Later that morning, Mr. Stevens' medical records were transmitted to the Detention Center. JA 282. Through these records and his file, each of the heath care providers who saw him at the Detention Center knew of Mr. Stevens' comorbid and high-risk conditions.

Mr. Stevens' first dose of Librium was dispensed Friday morning. JA 281. The second dose was dispensed on Friday afternoon at 4:00 p.m. JA 283. Throughout his detention, Mr. Stevens' medication was given as prescribed. But he rapidly started to deteriorate by Friday afternoon and, after several episodes of profound distress, never fully recovered. After his second dose of Librium, Mr. Stevens' "blood pressure increased to 190 over 112. He started vomiting." JA 284. The vomiting quickly became excessive. *Id.* His blood sugar spiked to 205. *Id.* No medical doctor was consulted. *Id.* The defendants kept monitoring him.

On Friday, Defendant Shroyer or Logsdon requested that a judge hold a bond hearing for Mr. Stevens. JA 285. Their efforts were unsuccessful. *Id.*

Mr. Stevens continued to decline. His respiration rate increased from 20 to 24, which is a condition known as tachypnea. *Id.* That evening, "Mr. Stevens was still vomiting to the same degree he was four hours prior, and he had increased sweating and anxiety." *Id.* During this first episode, Mr. Stevens was exhibiting the symptoms

4

of myocardial infarctions. JA 285. A patient with his profile and symptoms should be examined by a physician, his treatment plan reevaluated, and orders should be given for an electrocardiogram, chest x-ray, cardiac enzymes, and monitoring. JA 286. But Defendant Logsdon did not summon a physician. *Id.* They kept monitoring him.

By the middle of the night between Friday and Saturday, Mr. Stevens was in critical condition. JA 287. "Mr. Stevens moved to a cot in the booking department. He was sweating, disoriented, and ill." *Id.* "He was restless and disoriented, asking Defendant Logsdon, 'Where's the remote?'" *Id.* His pulse rate had dropped, his respiration rate was alarmingly high, and his scores under the withdrawal protocol were markedly high and required hospitalization. *Id.*; *see* JA 289. These were signs of a heart attack and/or sepsis. JA 287. But Defendant Logsdon did not take Mr. Stevens to the hospital, and a physician was not summoned. JA 289. Instead, she called James A. Piazza, a Physician Assistant ("Defendant Piazza). *Id.* Defendant Piazza ordered an increase in Mr. Stevens' dosage for Lisinopril, which he was prescribed to prevent a heart attack. *Id.* They kept monitoring him.

By 6:00 a.m. on Saturday, November 26, Mr. Stevens was still very ill. JA 294. Records by Defendant Logsdon showed his withdrawal "scores were unchanged, and his level of vomiting, sweating, agitation, disturbances, anxiety and

aches had not gone down the early morning." JA 294–95. She did not call a physician. *Id.*

Lisa R. Shutts, LPN ("Defendant Shutts") administered more Librium at 8:00 a.m. *Id.* Within the hour, Mr. Stevens' pulse rate increased, his respirations were still very high, and "he continued to exhibit the aforementioned symptoms, like vomiting and sweating." *Id.* The symptoms persisted throughout the day and into the evening. *Id.* He was not eating more than a few bites. *Id.* By 8:54 p.m., Mr. Stevens' respiration rate jumped to 28, the highest of his detention. JA 296. Defendant Shutts did not summon a physician. JA 295, 296. They kept monitoring him.

By the next morning, Sunday, November 27, Mr. Stevens had not improved. JA 296. His systolic blood pressure was up from 133 to 179, his pulse rate went from 99 to 107, and he still had an elevated respiration rate (tachypnea) of 26. *Id.* No physician was contacted. *Id.* The monitoring and medication dispensing continued.

That evening, "Defendant Shutts found Mr. Stevens lying in his bottom bunk 'soaked in his own urine.'" *Id.* "[H]e was more anxious and disoriented than he had been a few hours before." *Id.* She did not contact a physician. She offered him Tums and Gatorade, as he requested, and helped him change. JA 297.

Through his last night of detention, Mr. Stevens seemed to stabilize. *Id.* But by the next morning, Sunday, November 28, he refused to eat and had a temperature of 99.8 degrees. *Id.* Five other inmates made bond throughout the day but not Mr.

Stevens. *Id.* "Defendant Shroyer reported that Mr. Stevens 'smelled strongly of urine and body odor'" and advised that he needed a shower. *Id.* During his shower, he was short of breath and needed assistance. *Id.* Jodi L. Brashear, LPN ("Defendant Brashear") was called to the booking department to assist him. JA 298.

Some time that Monday, Mrs. Stevens called the Detention Center and asked Defendant Shroyer about her husband's health. JA 298. But "Defendant Shroyer did not share any information regarding Mr. Stevens' health status..." *Id.*

"One of the nurses charged with Mr. Stevens' care and at least one correctional officer had made comments during Mr. Stevens' detention indicating that they knew he was fatally ill and wanted him released from the Detention Center as soon as possible, so he would not die inside the facility." JA 301. Those "comments were overheard by a third party and later recounted to Mrs. Stevens." *Id.*

Monday evening, Mr. Stevens was transported to court for a bail hearing. *Id.* "Mr. Stevens was visibly listless and confused throughout the hearing." *Id.* He posted bond at 7:11 p.m. *Id.*

When he returned to the Detention Center to be processed for release, no examination was performed as required by Detention Center Regulations. JA 299. Yet on a Continuity of Care form, Defendant Brashear wrote that Mr. Stevens was "stable" upon release. *Id.* Mr. Stevens' "signature on the Continuity of Care form is distinctly sloppier than the signature that appears on his reception screening

records." *Id.* Defendant Brashear did not advise Mrs. Stevens that her husband had been profoundly ill and should be taken to the hospital immediately. *Id.* Instead, the Continuity of Care form gave the generalized recommendation to follow up with his primary care providers or go to the local emergency room "for any issue." *Id.* Mr. Stevens left the Detention Center with his wife.

"He came in on his own two feet, but after four full days in custody, Mr. Stevens had to be escorted out to his wife's car in a wheelchair." *Id.* Mrs. Stevens, a layperson without medical training, "recognized that Mr. Stevens was unwell" and made the earliest available appointment with her husband's primary care provider, which was on Wednesday morning. *Id.* But the next morning, "Mr. Stevens woke up in his home still unwell and disoriented." JA 300. He asked Mrs. Stevens for food to "absorb whatever they gave me" and "where you at?" when she was sitting right in front of him. *Id.* She eventually left the house for a mandatory meeting. *Id.* She returned later that evening. *Id.*

Mr. Stevens was dead. *Id.* It had been less than 20 hours since his release. *Id.* A partial autopsy revealed that Mr. Stevens died of Hypertensive Heart Failure. *Id.* Obesity and Diabetes Millitus were contributing causes of death. *Id.* A toxicology report showed only Librium and no other drugs or alcohol was in his system. *Id.* When Mrs. Stevens returned to the Detention Center on December 1, 2016, after Mr. Stevens' death, the staff avoided eye contact with her. JA 301.

## II.   Procedural Background

On November 22, 2019, Plaintiffs filed a Complaint in the U.S. District Court for the District of Maryland. JA 3. Plaintiffs filed an Amended Complaint four days later, before attempting to serve the original pleading on the Defendants. *Id.* The Amended Complaint was virtually identical to the original pleading except for a few minor changes. *See* JA 56–100. Those pleadings alleged federal and state constitutional violations under 42 U.S.C. § 1983, *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("*Monell*"), Article 24 of the Maryland Declaration of Rights, and *Prince George's County v. Longtin*, 419 Md. 450, 19 A.3d 859 (2011) ("*Longtin*") and state negligence and wrongful death claims. Specifically, the Amended Complaint alleged violations of the Fourteenth Amendment under § 1983, negligence and wrongful death by Defendants Holler, Shroyer, Manger, Logsdon, Piazza, Shutts, and Brashear (the "Individual Medical Defendants"). JA 42, 51, 52. The pleadings alleged a *Respondeat Superior* claim against Wellpath for its employees' negligence. JA 52. Finally, the pleadings alleged claims for municipal liability pursuant to *Monell* and *Longtin* against Sheriff Craig Robertson, Captain R. Lee Cutter, and the Board of County Commissioners for Allegany County (the "County Defendants"), and a *Respondeat Superior* claim for the underlying state constitutional violations

by the Individual Medical Defendants against the Board of County Commissioners for Allegany County. JA 45, 49, 48.

The Individual Medical Defendants and Wellpath filed an Answer. JA 5, 6.[2] The County Defendants moved to dismiss the three claims against them under Federal Rule of Civil Procedure 12(b)(6). JA 6; *see* JA 138–76. On April 8, 2020, the District Court granted that motion. JA 7; *see* JA 267.

In its Memorandum Opinion dismissing the case against the County Defendants, the District Court noted that Plaintiffs had failed to support an underlying cause of action against the Individual Medical Defendants for violations of the Fourteenth Amendment or Maryland Declaration of Rights. JA 264. An underlying constitutional violation is a necessary predicate for municipal liability.

On May 6, 2020, Plaintiffs filed a Second Amended Complaint. JA 7; *see* JA 268–336. The initial claims against the Individual Medical Defendants were unchanged, but a new claim was added to account for their alleged violation of Mr. Stevens' rights under Article 24 of the Maryland Declaration of Rights. JA 306; *see*

---

[2] Defendants Brashear, Holler, Logsdon, Manger, Piazza, Shroyer and Wellpath filed their Answer on January 10, 2020. JA 5. Defendant Shutts, who was served much later than the other Defendants, filed her Answer on January 24, 2020. JA 6.

JA 383. The *Monell* and *Longtin* claims were re-asserted against Wellpath. JA 304,

306; *see* JA 379, 384.[3]

The claims alleged in the Second Amended Complaint were as follows:

COUNT I – 42 U.S.C. § 1983
Estate of James Stevens against the Individual Medical Defendants

COUNT II – *Monell*
Estate of James Stevens against Wellpath

COUNT III – Article 24 of the Maryland Declaration of Rights
Estate of James Stevens against the Individual Medical Defendants

COUNT IV[4] – *Longtin*
Estate of James Stevens against Wellpath

COUNT V – Survival Action for Negligence
Estate of James Stevens Against the Individual Medical Defendants

COUNT VI – Wrongful Death
Shelly Stevens Against the Individual Medical Defendants

COUNT VII – *Respondeat Superior* for Negligence and Wrongful Death
Estate of James Stevens and Shelly Stevens against Wellpath

JA 301–10.

---

[3] A renewed analysis of the case law and other research uncovered a troubling pattern amid the company. Thus, the Second Amended Complaint included allegations of approximately 10 cases of inmate deaths under the care of Wellpath employees where the facts were strikingly similar to those in Mr. Stevens' case. JA 292–93; *see* JA 445. In each of those cases, the claims survived a motion to dismiss and/or had been settled by Wellpath. JA 451. Other allegations provided a snapshot of Wellpath's litigation history, as revealed by investigative reports. JA 291, 294.

[4] Due to a typographical error, Count IV was incorrectly plead as a second Count III.

The Medical Defendants moved to dismiss the Second Amended Complaint. JA 7; *see* JA 391–92. Plaintiffs filed a response in opposition. *Id.*; *see* JA 419–58. The Medical Defendants filed a reply. JA 8; *see* JA 459–73.

On July 10, 2020, the District Court granted the second Motion to Dismiss. JA 8, 496. The District Court concluded that Plaintiffs failed to show a constitutional deprivation as necessary to state a § 1983 claim against the Individual Medical Defendants mostly because the subjective component of the particular claim asserted had not been satisfied. JA 481–84, 489. "To state a claim for denial of medical care [under § 1983], a plaintiff must demonstrate that the actions or omissions of the defendants amounted to 'deliberate indifference' to a serious medical need." JA 480. Per the Supreme Court's holding in *Farmer v. Brennan*, "deliberate indifference" has both an objective and subjective component. JA 480. The former is the objectively serious medical need of the inmate or detainee, and the latter is that "'prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available…'" *Id.* (citation omitted).

In its Memorandum Opinion dismissing the Second Amended Complaint, the District Court noted that the parties did "not dispute that the Decedent's underlying health conditions satisfy the first prong of *Farmer*, as they were objectively serious." JA 481 (footnote omitted). But the subjective standard for deliberate indifference was not satisfied. JA 482–83 . The District Court reasoned, in part:

12

"Plaintiffs acknowledge that none of the Individual Defendants 'thought it necessary' to take the Decedent to the hospital";

"The Second Amended Complaint is absent of allegations that the Individual Medical Defendants intended to deny the Decedent adequate medical care, nor that they believed they were doing so"; and

"Plaintiffs merely outline their belief that, based on the Decedent's history and symptoms, he should have received an electrocardiogram, chest x-ray, cardiac enzymes, and monitoring."

JA 483.

The District Court also assessed the adequacy of the care provided to Mr. Stevens and found that "the Individual Defendants did everything possible to provide the Decedent with quick and available medical attention." JA 487. "Even if the Individual Defendants incorrectly were 'anchored' solely to the diagnosis of substance withdrawal, 'mere negligent' misdiagnoses is not a constitutional violation." *Id.* "No exceptional circumstances exist" to elevate the case beyond a mere disagreement over medical care. JA 485. Because Plaintiffs failed to state a § 1983 claim, Count I was dismissed with prejudice. JA 8.

Without an underlying constitutional deprivation, the *Monell* claim against Wellpath necessarily failed. JA 490. Count II was dismissed with prejudice. JA 8.

The state analog claims brought under Article 24 of the Maryland Declaration of Rights and *Longtin* were subject to the same standard as their federal counterparts. JA 490–91. Thus, Counts III and IV were also dismissed with prejudice. JA 8.

Only the three state law claims remained. The District Court declined to exercise supplemental jurisdiction over them. JA 491–94.

On July 24, 2020, Plaintiffs timely filed a Notice of Appeal. JA 497.

## SUMMARY OF THE ARGUMENT

The District Court erred in assessing the sufficiency of Plaintiffs' § 1983 claims against the Individual Medical Defendants. First, it overlooked a multitude of allegations that, had they been considered and reasonable inferences drawn therefrom, supported the subjective component of deliberate indifference. Second, reasonable inferences were not drawn in Plaintiffs' favor with regard to that element or the adequacy of care. Often, the subject component is proven through inferences, but here, no such inferences were drawn even at the pleading stage. And in assessing the adequacy of Mr. Stevens' care, the District Court went a step further, concluding that the Individual Medical Defendants did "everything possible" to treat Mr. Stevens. The Second Amended Complaint demonstrates otherwise.

Simply put, the District Court demanded too much of Plaintiffs at this early stage. Plaintiffs were only required to state a § 1983 claim and offer allegations that would advance those claims from conceivable to plausible. Plaintiffs supplied 34 pages of detailed factual allegations in a 43 page pleading that adequately supported the § 1983 claims. Accordingly, the Court erred in concluding that Plaintiffs had failed to state such a § 1983 claim and consequently dismissing the rest of the action.

# ARGUMENT

## I.    Standard of Review

This Court will "review a district court's grant of a motion to dismiss de novo." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)).

## II.    Argument

This appeal centers around the District Court's conclusion that Plaintiffs failed to state a § 1983 claim against the Individual Medical Defendants. The other claims were dismissed as a direct or collateral consequence of that conclusion.

To state a claim for relief, a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). To challenge the sufficiency of a pleading, the opposing party may move to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

A District Court should dismiss a pleading if the plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "In assessing the complaint's plausibility, [the Court will] accept as true all the factual allegations contained therein." *De'lonta v. Johnson*, 708 F.3d 520, 524 (4th Cir. 2013) (citation omitted). Likewise, the Court must draw all reasonable inferences in the plaintiff's favor. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citation omitted).

A plaintiff is not required to ***prove*** each element of her claim in a pleading. *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *see Owens*, 767 F.3d at 403–04; *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865, 869 (4th Cir. 1941) ("We are mindful that in weighing the validity of a motion to dismiss for insufficiency, the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail."). The "plausibility standard requires only that the complaint's factual allegations 'be enough to raise a right to relief above the speculative level.'" *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Thus, "[t]o survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely

16

advance her claim 'across the line from conceivable to plausible.'" *Id.* (*quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Owens*, 767 F.3d at 403 (*citing Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Ultimately, "dismissal for failing to state a claim is appropriate only in 'limited circumstances.'" *Stilwell v. Conceco*, 213 F.3d 632 (4th Cir. 2000) (*quoting Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989)).

Section 1983 creates a cause of action against any "person, who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any . . . other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…" 42 U.S.C. § 1983. A private party can be held liable under § 1983 if they are acting under color of law at the time of the violation. *See Connor v. Donelly*, 42 F.3d 220, 224 (4th Cir. 1994).

For the type of deprivation raised here, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*,  429 U.S. 97, 104, 97 S.Ct. 291, 292, 50 L.Ed.2d 251 (1976) (*quoting Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). A pretrial detainee has at least the same level of protection under the Fourteenth Amendment as that afforded to

17

prisoners under the Eighth. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Thus, "deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under s[ection] 1983." *Estelle*, 429 U.S. at 105, 97 S.Ct. 291.

To state such a claim, the detainee "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. 291. Deliberate indifference is a high standard – "the mere negligent or inadvertent failure to provide adequate care is not enough." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198 n.5, 109 S.Ct. 998, 1005 n.5, 103 L.Ed.2d 249 (1989).

"The test for deliberate indifference has two parts. First, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component)." *Clinkscales v. Pamlico Correctional Facility Medical Dept.*, 238 F.3d 411 (per curium) (4th Cir. 2000) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). For the subjective component, the plaintiff must show "that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 576–77 (4th Cir. 2001) (*citing White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). However, the subjective

component can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994); *De'lonta*, 708 F.3d at 525 (the subjective component "does not require actual purposive intent.").

### A. The District Court Overlooked Allegations That Supported The Subjective Component of Deliberate Indifference And Did Not Draw Reasonable Inferences In Plaintiffs' Favor In Assessing That Element.

Here, the gravamen of the District Court's decision to dismiss the § 1983 claims was its opinion that the subjective component had not been sufficiently pled. "Whether a prison official had the requisite knowledge of a substantial risk of a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence…" *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970. "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (*quoting Farmer*, 511 U.S. at 842, 114 S.Ct. 1970). In fact, "a plaintiff can make a prima facie case under this standard by showing 'that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it ...'" *Id.* (change in *Parrish*) (*quoting Farmer*,

19

511 U.S. at 842, 114 S.Ct. 1970). Likewise, evidence that an official misrepresented critical medical information "is sufficient to raise a reasonable inference that [the official] recognized that his response was inappropriate in light of [the detainee's] serious medical need." *Scarbro v. New Hanover County*, 374 Fed.Appx. 366, 371 (4th Cir. 2010) (*citing Parrish*, 372 F.3d at 303).

"Similarly, a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances." *Id*. "Moreover, under this standard for assessing whether deliberate indifference existed, even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify 'underlying facts that he strongly suspected to be true,' which, if verified, would have compelled him to realize that the claimant needed immediate medical attention, or that he 'declined to confirm inferences of risk that he strongly suspected to exist.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995); *see also Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985).

In *Scinto v. Stansberry*, this Court reversed the granting of summary judgment to a prison doctor and administrator in a *Bivens* action (the analog to § 1983 for federal officials) brought by a former federal prisoner who successfully raised a

genuine dispute about whether the defendants had the requisite knowledge when they failed to provide him aid during a medical emergency. 841 F.3d 219 (4th Cir. 2016). The prisoner had experienced acute gallstones while on lock-down, exhibiting "'outward signs' of his need for medical attention, including that his cell 'reeked to high heaven' and that his face was covered with partially wiped-up vomit and blood." *Id.* at 231. (footnote omitted). He allegedly called for help but the prison doctor refused to provide treatment and instead ordered him removed to a special unit; several days passed before he received medical attention for the gallstones. *Id.*

On the objective prong of *Farmer*, the Court concluded that "[a] juror could reasonably infer that failing to treat, for two to five days, an inmate who is vomiting blood and experiencing evident physical distress creates a substantial risk that serious bodily injury will result or has already occurred." *Id.* at 232. "Plaintiff also raised a genuine issue of material fact on the subjective prong of *Farmer*" because:

> Plaintiff's testimony that his cell "reeked" and his face exhibited visible signs of illness, as well as his contemporaneous account of his symptoms create a genuine factual dispute about whether his need for medical attention was ***so obvious*** that an official observing the scene would have both known of the facts giving rise to a risk of serious harm resulting from failure to provide medical attention and inferred that such a substantial risk was present. In addition, these outward signs of Plaintiff's need for medical attention and Defendants' contemporaneous failure to offer aid give rise to an inference of deliberate indifference sufficient for Plaintiff's claim to survive summary judgment.

*Id.* (emphasis added) (citation omitted).

21

Just as a Court can infer the subjective component from obvious symptoms, "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs." *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987).  In *Cooper*, the plaintiff and his friend approached an officer to report that he had been shot at a roller rink. *Id.* at 944. The officer called an ambulance and paramedics arrived. *Id.* But because of the chaotic scene outside the roller rink, the paramedics were unable to thoroughly examine Cooper and failed to discover his bullet wound. *Id.* Cooper and his friend were handcuffed and taken to the police station, where their pleas and protests went ignored. *Id.* Cooper eventually "attracted enough attention at one point to convince an officer to change his handcuffs so that he could lie down on the floor. *Id.* at 945. When he became unresponsive, officers reexamined him, found the wound, and sent him to the hospital. *Id.* at 944. By then, Cooper was in shock and needed surgery. *Id.* The trauma surgeon testified that "Cooper would have been in great pain and manifesting a variety of symptoms, including shortness of breath and gasping for air" during his time at the police station. *Id.*

After he recovered, Cooper brought § 1983 claims against the officers. *See id.* They argued "that their duty to Cooper was satisfied when they called the ambulance to the scene," but the Court disagreed. *Id.* at 945. "Continued complaints by Cooper, or the manifest symptoms described by [the trauma surgeon] would have put

defendants on notice that additional care was required." *Id.* (citation omitted). In other words, "Cooper's symptoms would have made it obvious that he required immediate medical attention during this time period." *Id.* Accordingly, there was enough evidence of deliberate indifference to submit the case to the jury – who found in Cooper's favor – and the trial court did not err in denying the defendant's motion for judgment notwithstanding the verdict. *Id.* at 946.

Two cases effectively demonstrate how *Cooper* applies in the post-*Farmer* context, particularly when an inmate exhibits a clear deterioration in response to an initial examination or treatment plan.   In *Perry v. Meade*, the inmate was experiencing pain, rectal bleeding and dizziness, so the medical providers at the jail prescribed him medication and gave him advice. 728 Fed.Appx. 180, 181 (4th Cir. 2018). The inmate "repeatedly informed Defendants that the treatment plan was ineffective and that his bleeding and pain had worsened," but they persisted and did not change the course of treatment. *Id.* "Significantly, while under Defendants' care or immediately thereafter, ***Perry's condition deteriorated*** to the point that he required hospitalization for five days and a blood transfusion." *Id.* (emphasis added) (*citing Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005)). While the Court "express[ed] no opinion on the ultimate disposition of Perry's claims," such facts were "sufficient to plausibly allege the subjective element of a deliberate indifference claim." *Id.* (*citing Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011)).

Similarly, in *Formica v. Aylor*, the plaintiff's Molar became so decayed and infected that it needed to be extracted. 739 Fed.Appx. 745 (4th Cir. 2018). The jail dentist recommended that he be referred for oral surgery, but a nurse would not let him go unless he paid for it and required that his condition be re-assessed by a jail doctor. *Id.* at 751–53. The trial court granted summary judgment to the nurse, but this Court vacated the judgment. *See id.* In finding the subjective component had been satisfied, the Court reasoned:

> The record reflects that Nurse Pitts was aware of or at least must have strongly suspected the substantial risks posed by the untreated Molar, as she was informed of such risks by both Formica and the Jail dentist, and ***she personally witnessed the degeneration of the Molar's condition***. Pitts nevertheless declined to schedule the extraction unless Formica could pay for the procedure in advance, thereby failing to acknowledge that Formica suffered from a serious medical condition and to take reasonable steps in response. . . . At bottom, as Pitts delayed the treatment of the Molar, she knew of and disregarded the excessive risk to Formica's health.

*Id.* at 758 (emphasis added).

Here, the District Court did not draw these inferences. First, the District Court found that the Second Amended Complaint was "absent of allegations that the Individual Medical Defendants intended to deny the Decedent adequate medical care, nor that they believed they were doing so." JA 482. The subjective component does ***not*** require intentional or purposeful acts of harm. *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970; *De'lonta*, 708 F.3d at 525. Moreover, the Second Amended Complaint ***did*** allege that the Individual Medical Defendants believed they had

provided Mr. Stevens with inadequate care. It contained the following express allegations:

- "One of the nurses charged with Mr. Stevens' care and at least one correctional officer made comments during Mr. Stevens' detention indicating that they knew he was fatally ill and wanted him released from the Detention Center as soon as possible, so he would not die inside the facility."

- "Each of the Individual [Medical] Defendants recognized that their actions were not sufficient."

JA 301, 303.

The Second Amended Complaint also included allegations from which the District Court could reasonably infer that the Individual Medical Defendants knew of the substantial risk from the mere fact that it was obvious. *See Parrish ex rel. Lee*, 372 F.3d at 303. Those allegations were:

- After his second dose of Librium, Mr. Stevens' "blood pressure increased to 190 over 112. He started vomiting." The vomiting was excessive.

- Later that evening, "Mr. Stevens was still vomiting to the same degree he was four hours prior, and he had increased sweating and anxiety."

- By the second night of detention, "Mr. Stevens moved to a cot in the booking department. He was sweating, disoriented, and ill."

- Once in the booking department, Mr. Stevens was suffering from diaphoresis and vomiting. "He was restless and disoriented, asking Defendant Logsdon, 'Where's the remote?'"

- On Saturday, November 26, Defendant Logsdon noted that Mr. Stevens' "level of vomiting, sweating, agitation, disturbances, anxiety and aches had not gone down since the early morning."

- After another dose of Librium, Mr. Stevens continued vomiting and sweating.

- By that evening, "Defendant Shutts found Mr. Stevens lying in his bottom bunk 'soaked in his own urine.'" "[H]e was more anxious and disoriented than he had been a few hours before."

- Even though Mr. Stevens was unwell, five other detainees made bond before him, suggesting that after four days of detention, Mr. Stevens was still too visibly unwell to be taken before a judge.

- "Mr. Stevens was *visibly* listless and confused throughout the hearing."

- Upon his release, Mr. Stevens' "signature on the Continuity of Care form is distinctly sloppier than the signature that appears on his reception screening records."

- "He came in on his own two feet, but after four full days in custody, Mr. Stevens had to be escorted out to his wife's car in a wheelchair."

- Mrs. Stevens, a layperson without medical training, "recognized that Mr. Stevens was unwell" and made the earliest available appointment with her husband's primary care provider.

JA 284–85, 287, 294–99 (emphasis added). In other words, Mr. Stevens' deterioration was both persistent and obvious.

Like in *Scinto*, where "outward signs" of the inmate's need for medical attention "was so obvious that an official observing the scene would have both known of the facts giving rise to the risk of serious harm resulting from failure to provide medical attention and inferred that such a substantial risk was present," Mr. Stevens' obvious and repeated symptoms of distress – which the Individual Medical Defendants closely monitored and documented over the course of four days – were

enough to support the inference that they knew of and disregarded the serious risk. *Scinto*, 841 F.3d at 231–32. Similarly, like in *Perry*, where allegations that providers persisted in their course of treatment even though Perry's symptoms worsened and he "deteriorated to the point where he required hospitalization" were "sufficient to plausibly allege the subjective element of a deliberate indifference claim," Mr. Stevens alleged that the Individual Medical Defendants continued to dispense medication and monitor him rather than change course. *Perry*, 728 Fed.Appx. at 181. Whereas Mr. Stevens also deteriorated to the point where he required hospitalization, the Individual Medical Defendants did not take action. By the time he was released, it was too late. Such allegations may not be enough for an "ultimate disposition" in Plaintiffs' favor, but they are sufficient to plausibly ***allege*** the subjective component of deliberate indifference.

Importantly, the Second Amended Complaint also contained allegations from which the District Court could infer, from the misleading nature of the conduct, that the Individual Medical Defendants knew their response to Mr. Stevens' deterioration was inadequate. For example, on the day of Mr. Stevens' release – a point at which he had already experienced multiple episodes of distress and was hours from death – Mrs. Stevens called the Detention Center and asked about her husband's health. JA 298. Yet "Defendant Shroyer did not share any information regarding Mr. Stevens' health status..." *Id.* Likewise, Defendant Brashear misrepresented that Mr.

Stevens was "stable" upon release, even though no examination was performed and Mr. Stevens was unquestionably ill that day – too ill to even shower on his own. JA 299. From Defendants Shroyer's and Brashear's misrepresentations and omissions, the Court can infer that the Individual Medical Defendants recognized that their treatment of Mr. Stevens was ineffective. *Scarbro*, 374 Fed.Appx. at 371 (*citing Parrish*, 372 F.3d at 303). At the very least, such conduct is the precise type of avoidance – burying one's head in the sand to avoid verifying those facts that one suspects to be true and indicate a substantial danger – that cannot be used to escape liability. *See Farmer*, 511 U.S. at 844, 114 S.Ct. 1970; *Brice*, 58 F.3d at 105.

The District Court ignored all of those allegations. Instead, the District Court noted that "Plaintiffs acknowledge that none of the Individual Defendants 'thought it necessary' to take the Decedent to the hospital." JA 483. The phrase 'thought it necessary' is a figure of speech; the Individual Medical Defendants ***did not*** take Mr. Stevens to the hospital, even though they knew – or, under the circumstances, it is reasonable to infer that they knew – he was at risk for serious medical harm if he was not hospitalized.

To be sure, there is no indication at this stage of whether Mr. Stevens complained to the Individual Medical Defendants or asked to be hospitalized, unlike the plaintiffs in some of the aforementioned cases. Medication was timely dispensed and he apparently did not demand something different. But Mr. Stevens was not in

his right mind; as alleged, he was so disoriented that he asked for the remote control and could not stand up to take a shower. He urinated on himself several times. He was not a doctor. He was hardly in a position to know what he needed and ask for it.

In short, there were ample allegations of outward and obvious symptoms manifest of heart failure that supported a reasonable inference that the subjective component was plausible. The few allegations cherry picked by the District Court were not enough to elevate Plaintiffs' case to one of those "limited circumstances" where dismissal under Rule 12(b)(6) was warranted. *Rogers*, 883 F.2d at 325.

### B. The District Court Applied A Standard More Stringent Than That Required To Survive A Motion To Dismiss Under *Twombly* and *Iqbal*.

"[S]ection 1983 claims are not subject to a 'heightened pleading standard' paralleling the rigors of proof demanded on the merits." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (*quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)); *see*, *e.g.*, *Charles v. Orange County*, 925 F.3d 73, 89–90 (2d Cir. 2019) ("That Plaintiffs have adequately stated a claim does not, of course, mean that they have established their entitlement to relief. Plaintiffs will need to provide evidence to back up their allegations. . . . But, at the pleading stage, we hold that Plaintiffs have adequately stated a Fourteenth Amendment substantive due process claim."); *Dixon v. County of Cook*, 819 F.3d 343, 350 (7th Cir. 2016) (where allegations that doctor, who knew about inmate's tumor, only offered over-the-

counter pain medication, discharged inmate from jail hospital, and ordered that his wheelchair be removed sufficiently supported claim, "[w]e make no prediction about the way this part of the case might turn out. We conclude only that Lula's amended complaint plausibly alleged enough to survive a motion to dismiss..."). In other words, a § 1983 claim must be accompanied by allegations that satisfy the plausibility standard from *Twombly* and *Iqbal*, as set forth above, and nothing more.

Here, the District Court demanded too much from Plaintiffs – more than what *Twombly* and *Iqbal* require. In finding that the subjective component had not been stated, the District Court reasoned: "Plaintiffs merely outline their belief that, based on the Decedent's history and symptoms, he should have received an electrocardiogram, chest x-ray, cardiac enzymes, and monitoring." JA 483. Plaintiffs can survive a motion to dismiss with an ***outline***, so long as the allegations "advance her claim 'across the line from conceivable to plausible.'" *Houck*, 791 F.3d at 484 (*quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955); *see Owens*, 767 F.3d at 403 (a plaintiff's "recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." (citation omitted)).

Moreover, Plaintiffs supplied much more than an outline. The Second Amended Complaint contained multiple allegations of Mr. Stevens having life-threatening symptoms of heart failure, and the Individual Medical Defendants failing to take meaningful action in response. To be sure, the providers examined him upon

30

intake, prescribed and dispensed Librium and other medications, and monitored him closely; at one point, Defendants Logsdon and Piazza increased his prescription for Lisinopril. But he continued to exhibit symptoms of profound distress throughout his detention. Like in *Cooper*, where the "manifest symptoms" of his gunshot wound "would have put defendants on notice that additional care was required," Mr. Stevens' persistent deterioration (in concert with his known, high-risk, comorbid conditions) put the Individual Medical Defendants on notice that he needed an electrocardiogram, chest- x-ray, or cardiac enzymes, or to be hospitalized, or – at the very least – an examination by a physician. *Cooper*, 814 F.2d at 945.

The District Court also stated that "Plaintiffs fail to detail any intent or knowledge by the Individual Defendants to delay the Decedent's treatment." JA 487. Again, Plaintiffs were not required to ***detail*** each element to avoid dismissal. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. They only had to ***state*** their claims with sufficient factual allegations to allow the court to reasonably infer that those claims were plausible. *Id.*; *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

It would have been impossible for Plaintiffs to detail each of the Individual Medical Defendants' state of mind at this early stage, as Mrs. Stevens has not had the benefit of discovery. What she did have, however, was Defendants' documentation about Mr. Stevens' condition over the course of his detention. She used those notes to supply 34 pages of detailed factual allegations in a 43 page

pleading accompanied by a Certificate of Qualified Expert Report analyzing those allegations. In *Formica*, the fact that the nurse knew the inmate had been referred for surgery and "personally witnessed the degeneration of the Molar's condition" was enough to vacate summary judgment in the nurse's favor. *Formica*, 739 Fed.Appx. at 758. Accordingly, that the Second Amended Complaint alleged that each of the Individual Medical Defendants knew of Mr. Stevens' comorbid and high-risk conditions and personally observed his deterioration is more than enough to survive the pleading stage.

### C. The District Court Also Failed To Draw Reasonable Inferences In Plaintiffs' Favor With Regard To The Adequacy of Mr. Stevens' Care.

The District Court found that Mr. Stevens was given adequate medical care, and there were no exceptional circumstances to elevate the claim beyond a mere disagreement over treatment, which falls below the level of deliberate indifference. JA 485, 489.

Even if the objective and subjective components are both satisfied, "a prison official who responds reasonably in the face of a known, serious risk of harm to an inmate may be 'free from liability' under the Eighth Amendment even if harm is not avoided." *Scinto*, 841 F.3d at 230; *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970 ("In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Here, in assessing the reasonableness of the Individual Medical Defendants'
actions, the District Court concluded that "the Individual Defendants did *everything*
*possible* to provide the Decedent with quick and available medical attention." JA
487 (emphasis added). That conclusion is inconsistent with the factual allegations.
It was possible to take Mr. Stevens to the hospital, but that did not happen. It was
possible to procure an electrocardiogram, but that did not happen. It would have
been possible for an on-call physician to assess him in person, had one been called.
But that, too, did not happen. Those omissions, among others, were alleged in the
Second Amended Complaint. Had the District Court drawn all reasonable inferences
in favor of Plaintiffs, as it was required to do, it would have found it plausible that
more could have and should have been done for Mr. Stevens.

The District Court further asserted that Mr. Stevens "was actively monitored
and treated, in accordance with his wishes" and "Plaintiffs do not allege that any of
the Decedent's requests, or treatment needs went unaddressed." JA 486, 489. Even
if monitoring vitals and dispensing medication constituted "treatment" – which
Plaintiffs do not concede – it does not follow that such treatment automatically
precludes a claim of deliberate indifference. *See De'lonta*, 708 F.3d at 526 ("But just
because Appellees have provided De'lonta with *some* treatment consistent with the
GID Standards of Care, it does not follow that they have necessarily provided her

with *constitutionally adequate* treatment." (emphasis original) (citation omitted));

*Perry*, 728 Fed.Appx. at 182. As this Court has posited:

> [I]magine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that the inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure, requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact they were giving him a painkiller? We think not.

*De'lonta*, 708 F.3d at 526 (reversing dismissal of claims).

Here, the persistent failure to do more than monitoring, especially when the monitoring revealed a rapid and life-threatening deterioration, is exactly the kind of allegation that gives rise to a claim for inadequate medical treatment. While erroneous diagnosis of a serious heart condition and even grave mistakes in treatment generally fall short of deliberate indifference, *see Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014), the Second Amended Complaint alleges more than that. It alleges symptoms that, by all objective measure, required hospitalization, and that the Individual Medical Defendants deprived Mr. Stevens of access to a physician, hospital, or diagnostic equipment knowing the risks of that deprivation.

For those reasons, the District Court erred in concluding that Plaintiffs failed to state a § 1983 claim for deliberate indifference to serious medical needs. Taking all allegations as true and drawing inferences in Plaintiffs' favor, the Second Amended Complaint adequately nudges the § 1983 claims from conceivable to plausible. Nothing more is required.

34

### D. Because the District Court Erred In Finding That No Constitutional Violations Were Stated, The Remaining Claims Should Be Reinstated.

The merits of the *Monell* claim against Wellpath were not analyzed. There is no *respondeat superior* liability under § 1983 unless the government's policy or custom is the moving force behind the injury. *Monell*, 436 U.S. 658, 98 S.Ct. 2018. However, if there is no underlying constitutional violation by an individual, there can be no liability under *Monell*. *Grayson v. Peed*, 195 F.3d 692, 698 (4th Cir. 1999).

Here, Plaintiffs set forth substantial new allegations pertaining to the litigation history of Wellpath, which showed a pattern strikingly similar to the facts raised here. *See* JA 291–94. In its Memorandum Opinion, the District Court recognized that the principles of § 1983 and *Monell* liability apply with full force to Wellpath. JA 489. But the Court did not analyze the new allegations. "Plaintiffs have not adequately pled that the Decedent suffered a deprivation of his constitutional rights," so there could be no liability for Wellpath. JA 490.

For the reasons set forth above, the District Court erred in concluding that Plaintiffs failed to state claims under § 1983 against the Individual Medical Defendants. Accordingly, dismissal of the *Monell* claim was not warranted.

Counts III and IV (the state analog to claims for deliberate indifference and *Monell* liability under Article 24 of the Maryland Declaration of Rights and *Longtin*, respectively), were dismissed for the same reasons as the § 1983 and *Monell* claims. "Claims under Article 24 of the Maryland Declaration of Rights are assessed under

the same standard as a due process claim pursuant to 42 U.S.C. § 1983." JA 490 (citation omitted).  Likewise, claims for municipal liability under *Prince George's County v. Longtin*, 419 Md. 450, 19 A.3d 859 (2011) "are essentially Maryland's version of *Monell* claims." JA 491 (citation omitted). Thus, "Plaintiffs cannot maintain a claim under the Maryland Declaration of Rights" and "to the extent Plaintiffs are simply reasserting their *Monell* claims against [the Individual] Medical Defendants as *Longtin* claims, they fail for the same reasons . . ." JA 491.  Again, for the foregoing reasons relating to the District Court's error with regard to § 1983 and *Monell*, dismissal of Counts III and IV was not appropriate.

The three state claims remaining (negligence, wrongful death, and *respondeat superior*) were dismissed as a collateral consequence of the Court's decision on the constitutional claims.[5] A "district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). In exercising that discretion, the Court considers a series of factors related to fairness and convenience. *See* JA 492. Here, the Court only had original jurisdiction over the § 1983 and *Monell*

---

[5] The Defendants had also raised an issue with regard to nonjoinder, arguing that Plaintiffs' failure to join necessary parties warranted dismissal of the wrongful death claim. *See* JA 492. That issue did not form the basis of the District Court's decision not to move forward on those state law claims alone, although the District Court did find that "[t]he contested issue of joinder weighs in favor of this Court declining to exercise supplemental jurisdiction." JA 493.

claims, and it found all of the factors favored dismissal of the three state law claims. *Id.* Plaintiffs do not appeal the District Court's analysis of those factors. Rather, the District Court would not have had discretion to decline to exercise supplemental jurisdiction under § 1367 had the § 1983 claims not been improperly dismissed.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request oral argument on the issues raised in this appeal. Pursuant to Fed. R. App. P. 34(a) and Local Rule 24(a), oral argument should be heard because this case raises questions about a litigant's right to advance to the early stage of discovery on claims of a constitutional magnitude.

## CONCLUSION

For the foregoing reasons, Appellants Shelly Stevens, on behalf of herself as Mr. Stevens' widow and as personal representative of the Estate of James Stevens, requests that this Court vacate the Order dismissing the Second Amended Complaint and remand this case back to the U.S. District Court for the District of Maryland.

Respectfully submitted,

/s/ Charles N. Curlett, Jr.
Charles N. Curlett, Jr.
Lauren M. McLarney
Rosenberg Martin Greenberg, LLP
25 S Charles Street 21st Floor
Baltimore, Maryland 21201
Phone: (410) 727-6600
ccurlett@rosenbergmartin.com
lmclarney@rosenbergmartin.com

# ADDENDUM

42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [9,234] words.

[     ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; or

[     ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [*state number of characters per inch and name of type style*].

Dated: <u>September 22, 2020</u>                           /s/ Lauren M. McLarney
                                                          *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 22nd day of September, 2020, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Kelly M. Goebel
Whiteford, Taylor & Preston LLP
7 St. Paul Street, 15th Floor
Baltimore, Maryland 21202
(410) 347-8730
kgoebel@wtplaw.com

*Counsel for Appellee*

/s/ Lauren M. McLarney
*Counsel for Appellant*